IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAMIRA T., ) | |
| ) | No. 19-cv-07758 |
| Plaintiff, ) | |
| ) | Magistrate Judge M. David Weisman |
| v. ) | |
| ) | |
| ANDREW SAUL, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Samira T. appeals the Social Security Administration Commissioner's decision denying her application for benefits. For the reasons set forth below, the Court reverses the Commissioner's decision.

### Background

On May 9, 2016, plaintiff applied for benefits, alleging a disability onset date of September 15, 2014. (R. 25.) Her application was denied initially on September 29, 2016, and upon reconsideration on January 31, 2017. (*Id.*) Plaintiff requested a hearing, which was held by an Administrative Law Judge ("ALJ") on June 19, 2018. (*Id.*) On October 25, 2018, the ALJ issued an unfavorable decision finding Plaintiff not disabled. (R. 22-41.) The Appeals Council declined to review the decision (R. 1-7), leaving the ALJ's decision as the final decision of the Commissioner. *See Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

### Discussion

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "substantial evidence in the record," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992)

(quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). While generous, this standard "is not entirely uncritical," and the case must be remanded if the "decision lacks evidentiary support." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. Under the regulations, the Commissioner must consider: (1) whether the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether the claimant's impairment meets or equals any listed impairment; (4) if not, whether the claimant retains the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether he is unable to perform any other work existing in significant numbers in the national economy. *Id.*; *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four, and if that burden is met, the burden shifts at step five to the Commissioner to provide evidence that the claimant is capable of performing work existing in significant numbers in the national economy. *See* 20 C.F.R. § 404.1560(c)(2).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since September 15, 2014, the alleged onset date. (R. 27.) At step two, the ALJ found that plaintiff has the following severe impairments: "lumbar spine degenerative disc disease ("DDD"); cervical spine DDD; left shoulder rotator cuff tendonitis and/or bursitis and mild osteoarthritis; and obesity." (*Id.*) At step three, the ALJ found that plaintiff does not have an impairment set forth in

the listing of impairments promulgated by the Commissioner. (R. 29.) This finding led the ALJ to conclude at step four that plaintiff has the residual functional capacity to "perform sedentary work" with certain exceptions. (R. 30.) At step five, the ALJ determined that plaintiff is "capable of performing past relevant work as a Cashier." (R. 40.) Accordingly, the ALJ concluded that plaintiff was not disabled under the Social Security Act. (R. 41.)

Plaintiff first argues that the ALJ erred in his assessment of the medical evidence as it relates to her cardiac condition. She argues, in part, that the ALJ relied on outdated State agency opinions and improperly interpreted the significance of raw medical evidence. According to plaintiff, the state agency doctors likely would have imposed greater restrictions had they been aware of plaintiff's new cardiac tests. Plaintiff says that the ALJ should have called a medical expert to review this evidence because it was new and potentially decisive.

In September 2016 and January 2017, non-examining State agency medical consultants, Drs. Kenny and Madison, rendered their disability determinations. (R. 81-93; 95-107.) The ALJ gave "substantial weight" to these opinions, finding that "the record as a whole supports these opinions when they were made and there is still ample support." (R. 39-40.) Plaintiff says that, after the issuance of these opinions, she suffered cardiac complications and underwent a series of tests, including a cardiovascular stress test, a cardiac catherization/intervention, and a different walking cariolite cardiac stress test. (Dkt. 19 at 6; R. 597-614.) Plaintiff says that the ALJ erred when he relied on Dr. Kenny and Dr. Madison's outdated opinions and when he independently interpreted raw evidence of her cardiac condition. In his decision, the ALJ noted that there had been "development of the evidence since [Drs. Kenny and Madison issued their opinions]," but the "[new evidence] shows stability of impairments with treatment and no worsening deficits."

3

(R. 40.) Plaintiff disagrees and says that the new cardiac evidence reflects a decline and complication of her condition.

The Court agrees that this new evidence about plaintiff's cardiac condition may have informed the State agency medical consultants' decisions about plaintiff's recommended restrictions. The ALJ's decision to rely on outdated medical reviewer opinions and to interpret raw medical evidence was error. *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018) ("An ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion."); *see also Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018) ("ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves.").

The government argues that the ALJ appropriately considered the additional cardiac evidence, including the medical evidence that was not reviewed by the consulting physicians "and reached reasonable inferences from all of it." (Dkt. 26 at 6.) The problem with this argument is that the ALJ actually gave "substantial weight to [Dr. Kenny and Dr. Madison's] opinions," which admittedly *did not consider* relevant cardiac developments in plaintiff's medical history. As to the more recent cardiac developments, the ALJ offered his own assessment of the meaning and import of this medical evidence without the benefit of a medical opinion to determine the significance of these medical findings. *See Lambert*, 896 F.3d at 774.

Plaintiff next complains that the ALJ erred when he stated that her allegations were "not entirely consistent," "inconsistent," "grossly disproportional to," not "fully consistent," and "significantly inconsistent." (Dkt. 19 at 10.) According to plaintiff, these terms/phrases suggest that the ALJ would have only accepted plaintiff's alleged limitations if they were completely consistent with the record. That is, the ALJ employed a heightened evidentiary standard.

4

Using boilerplate language and/or phrases such as "not entirely consistent," can be problematic. *See Plessinger v. Berryhill*, 900 F.3d 909, 916 (7th Cir. 2018) (discussing the need for ALJs to provide a greater explanation of their reasoning rather than using "meaningless boilerplate" language); *see also Dejohnette v. Berryhill*, No. 16-cv-11378, 2018 WL 521589, at *5 (N.D. Ill. Jan. 22, 2018) ("'Not entirely consistent' is an opaque phrase that fails to specify what evidence the ALJ considered consistent and what evidence she considered inconsistent with the record."). In assessing subjective symptoms, an ALJ must consider a variety of factors, including objective medial evidence; daily activities; "the location, duration, frequency, and intensity of pain or other symptoms"; and use of medication. SSR 16-3p[1], 2016 WL 1119029, at *7. An ALJ must give specific reasons for discrediting a claimant's testimony, and "[t]hose reasons must be supported by record evidence and must be 'sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539-40 (7th Cir. 2003).

Here, the ALJ reviewed the objective evidence in the record, considered plaintiff's testimony, and compared the evidence with plaintiff's statements. (R. 31-.) The ALJ discussed plaintiff's headaches, which she says occur on a daily basis. (R. 31.) The ALJ took note of plaintiff's complaints of constant neck and left arm pain, which radiates "all the way from her shoulder to her hand." (*Id*.) Additionally, the ALJ noted that plaintiff previously underwent lumbar spine surgery and that plaintiff has sciatica, which causes an unsteady gait and makes her dizzy when walking. (*Id*.) Further, the ALJ noted that plaintiff says she uses a cane, that she suffers from chest pain/palpitations and shortness of breath at times, that she cannot sit or stand

---

[1] The Court notes that Defendant revised its guide for evaluating symptoms in disability claims, which "eliminat[es] the use of the term 'credibility'" to "clarify that subjective symptom evaluation is not an examination of an individual's character." *See* SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016).

for long periods of time, that she becomes disoriented when her blood pressure is high, and that her daughter and her daughter's husband have to help her with certain daily activities. (R. 31-32.) The ALJ also took note of plaintiff's treatment history, including back surgery and physical therapy. (R. 33-36.) And, the ALJ noted that plaintiff was prescribed Vicodin for neck pain in 2014, Tramadol for head and neck pain in 2015, Ibuprofen for head and neck pain in 2016, medications for hypertension in 2016, and Ativan for anxiety in 2017. (R. 32-35.)

The ALJ appropriately evaluated Plaintiff's alleged symptoms in-depth and in the context of the objective medical evidence. *See, e.g.*, *Back v. Barnhart*, 63 Fed. App'x 254, 259 (7th Cir. 2003) (noting that "the regulations direct the ALJ to evaluate medical evidence and to look for objective medical evidence that corroborates a claimant's subjective statements of pain"); *Lopez v. Astrue*, 807 F. Supp. 2d 750, 761 (N.D. Ill. 2011) ("Although an ALJ cannot ignore a claimant's subjective reports of pain simply because they are not fully supported by objective medical evidence, discrepancies between objective evidence and self-reports may suggest symptom exaggeration."). For example, the ALJ found that plaintiff's complaints of daily headaches are contradicted, or not supported, by the record (e.g. "medical records reflect only a few scattered complaints" (R. 36).) The ALJ also noted that the record did not show any recent complaints by plaintiff of radiating neck pain and that plaintiff made few reports of lightheadedness or dizziness within the past two years. (*Id.*) Further, the ALJ noted that the record shows only one reference to plaintiff's use of a cane, the record shows no indication that the cane was prescribed to plaintiff, and plaintiff did not use a cane during the hearing. (*Id.*) The ALJ found that while there is an objective basis for plaintiff's symptoms, her statements about the intensity, persistence, and limiting effects of her symptoms are not consistent and there is no sufficient objective support (e.g. plaintiff has made reports of severe pain and weakness and has undergone treatment, but there is

6

a lack of supportive objective findings to show disabling functional limitations). (R. 37.) In making this finding, the ALJ built a "logical bridge" between the evidence and his determination that that there is a "wide disparity between objective findings in the record and [plaintiff's] subjective complaints." (*Id.*) *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) ("The ALJ is not required to discuss every piece of evidence, but must build a logical bridge from evidence to conclusion."). Despite the ALJ's detailed and thorough evaluation of plaintiff's symptoms and the objective medical evidence, the symptom evaluation is informed by a proper assessment of all of the medical evidence, including the new evidence related to plaintiff's cardiac condition. As noted *supra*, the ALJ should revisit the issue of her cardiac condition and related tests on remand.

Finally, plaintiff challenges the ALJ's Step 4 and RFC analysis. The Court declines to discuss these issues at length given the need for remand that already exists.

## Conclusion

For the reasons set forth above, the Court reverses the Commissioner's decision, denies the Commissioner's motion for summary judgment [25], and remands this case for further proceedings consistent with this Memorandum Opinion and Order.

SO ORDERED. ENTERED: March 31, 2021

_____
**M. David Weisman**
**United States Magistrate Judge**